UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

O.G.C.,

                Petitioner,

       -v-                                1:17-CV-582

M.E.C.,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                   OF COUNSEL:

OFFICE OF DIANE M. MARTIN-GRANDE      DIANE M. MARTIN-GRANDE, ESQ.
Attorneys for Petitioner
1200 Floyd Avenue
Rome, NY 13440

OFFICE OF JEFFREY DEROBERTS             JEFFREY DEROBERTS, ESQ.
Attorneys for Respondent
333 East Onondaga Street, 3rd Floor
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## **ORDER**

Petitioner O.G.C. (the "father" or the "petitioner"), a Mexican citizen and resident, has filed this petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") and the International Child Abduction Remedies Act ("ICARA") seeking an order compelling respondent M.E.C. (the "mother" or the "respondent"), a United States citizen and resident, to send A.E.C., the couple's minor child, to live with him in Mexico.

"The Hague Convention was adopted in 1980 'to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.'" A.A.M. v. J.L.R.C., 840 F. Supp. 2d 624, 629 (E.D.N.Y. 2012) (quoting Gitter v. Gitter, 396 F.3d 124, 129 (2d Cir. 2005)).

To give force and effect to this international obligation, the United States passed a federal law known as ICARA, which provides that a "petitioner seeking the return of a child pursuant to the Hague Convention and the Act must demonstrate that the removal of the child from the State in which the child was 'habitually resident' was 'wrongful.'" A.A.M., 840 F. Supp. 2d at 630 (citations omitted).

To determine a child's state of "habitual residence," the Second Circuit has adopted the following standard:

> First, the court should inquire into the shared intent of those entitled to fix the child's residence (usually the parents) at the latest time that their intent was shared. In making this determination the court should look, as always in determining intent, at actions as well as declarations. Normally the shared intent of the parents should control the habitual residence of the child. Second, the court should inquire whether the evidence unequivocally points to the conclusion that the child has acclimatized to the new location and thus has acquired a new habitual residence, notwithstanding any conflict with the parents' latest shared intent.

Mota v. Castillo, 692 F.3d 108, 112 (2d Cir. 2012) (citation omitted).

As for the question of "wrongfulness," the Convention itself explains that:

The removal or the retention of a child is . . . wrongful where–

    a)    it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child

>               was habitually resident immediately before the removal or retention; and
>
> b)          at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Mota, 692 F.3d at 113 (citation omitted).

Upon review of the petition, the father has failed to demonstrate that he and the mother ever formed a settled intention to abandon the United States as the child's habitual residence in favor of Mexico. Notably, the couple met and were married in the State of New York in September of 2004. The mother is a United States citizen, and the child was born in the State of New York and holds a United States passport.

The father's affidavit indicates that he alone chose to relocate to Mexico in March of 2010, and that the mother and child remained living in the United States without him for another full year. Although the mother and child apparently joined him in Mexico for a time, the pair returned to the United States in October of 2015 and resumed living in the State of New York with the child's maternal grandfather.

As respondent points out, the father did not file the instant ICARA petition until May of 2017, nearly two years after the allegedly wrongful removal occurred. See Cantor v. Cohen, 442 F.3d 196, 212 (4th Cir. 2006) (Traxler, J., dissenting) (observing that one of the Convention's goals is "that the status quo be returned rapidly").

Under the circumstances presented here and in light of the course of proceedings in this case, the petition will be denied. Cf. Wild v. Eliot, 147 F. Supp. 3d 49, 54 (D. Conn. 2015) (concluding after an evidentiary hearing that father failed to demonstrate couple's settled intention to abandon the United States as the child's habitual residence where, inter

alia, the couple met in the United States, married in the United States, and the child was born in the United States).

Therefore, it is

ORDERED that

1. Respondent's motion to dismiss is GRANTED;

2. The Clerk of the Court is directed to terminate all pending motions and close the file; and

3. Petitioner is advised that additional or alternative relief may be sought in a state forum.

IT IS SO ORDERED.

Dated: July 10, 2018
      Utica, New York.                         United States District Judge